IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTY BARKER, et al.,** | ) | JUDGE JOHN A. ADAMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.    5:19-cv-00276 |
| vs. | ) | |
| | ) | |
| **GEORGE T. MAIER, STARK COUNTY SHERIFF, in his official capacity,** | ) ) ) | **JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT** |
| Defendant. | ) | |

Representative Plaintiffs Christy Barker and Deanna Clapper, and Defendant George T. Maier, in his official capacity as the Stark County Sheriff, (collectively, the "Parties") respectfully move this Court for an Order approving their settlement of claims under the Fair Labor Standards Act ("FLSA"). For the reasons set forth in the accompanying memorandum and in the attached Exhibits, the parties' settlement is a fair and reasonable resolution of a bona fide dispute. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement");

**Exhibit 2**: Proposed Notice of Settlement of Collective Action Lawsuit and Claim Form and Release;

**Exhibit 3**: Declaration of Christopher J. Lalak; and

**Exhibit 4**: Proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal With Prejudice.

1

**MEMORANDUM IN SUPPORT**

I.     FACTUAL AND PROCEDURAL BACKGROUND.

    A.     Summary of the Litigation.

On February 5, 2019, Plaintiffs filed a collective action complaint on behalf of themselves and other similarly situated non-exempt employees alleging that Defendant violated the Fair Labor Standards Act by (1) failing to compensate corrections officers for "pass down" work performed at the beginning and end of each shift; (2) failing to incorporate perfect attendance bonuses into the regular rate when calculating overtime; and (3) failing to incorporate medical opt out bonuses into the regular rate when calculating overtime. (ECF No. 1).[1]

Defendant filed a Motion to Dismiss Counts two and three of the Amended Complaint on April 18, 2019, alleging that regular rate for perfect attendance bonuses and medical opt out bonuses was calculated correctly as a matter of law. (ECF No. 17). Plaintiffs filed their Opposition to same on May 17, 2019, and Defendant filed its Reply on May 31, 2019. (ECF Nos. 20, 22). Plaintiffs filed a Motion for Conditional Certification on May 28, 2019. (ECF No. 21). Defendant filed an Opposition to Conditional Certification on June 11, 2019, and Plaintiffs filed a Reply Memorandum in support on June 18, 2019. (ECF Nos. 23, 24). Defendant filed a Notice of Supplemental Authority on August 28, 2019, and Plaintiffs filed their objection to same the following day. (ECF Nos. 25, 26). On March 18, 2020, this Court issued its Order Denying Defendant's Motion to Dismiss and granting Plaintiffs' Motion for Conditional Class Certification. (ECF No. 27).

---

[1] Plaintiffs filed an Amended Complaint on April 1, 2019, naming George T. Maier as Defendant. (ECF No. 12).

2

B. <u>The Parties Entered into Informed Settlement Discussions.</u>

In late March 2020, the Parties conferred regarding the pending claims and agreed to enter into settlement discussions. On April 1, 2020, the Parties filed a Joint Motion to Stay Litigation Pending Settlement Discussions. (ECF No. 29). Since the filing of the Stay, the Parties have engaged in extensive informal discovery regarding the allegations and alleged damages. Specifically, Defendant produced hundreds of pages of data evidencing hours worked by Eligible Settlement Participants during the Covered Period, as well as spreadsheets containing hundreds of thousands of lines of data concerning hours worked. (Lalak Decl. ¶ 13). Plaintiffs' Counsel engaged the services of a PhD economist to compile this information and prepare a damages model. The model was built and further adjusted based on discussion by the Parties in the course of settlement negotiations. (Lalak Decl. ¶ 13). Based on the given set of assumptions discussed by the Parties, the total amount of alleged unpaid wages for the Eligible Settlement Participants during the Covered Period is $106,096.48. The parties reached an agreement following extensive discussions based upon these calculations. (Lalak Decl. ¶ 14).

C. <u>Summary of the Key Settlement Terms</u>.

The total settlement amount is $106,000.00. (Lalak Decl. ¶ 15). This amount includes: (a) all individual settlement payments to 339 Eligible Settlement Participants[2]; (b) a service award of $2,500 each to the Representative Plaintiffs for their services in bringing and prosecuting this

---

[2] Eligible Settlement Participants are defined as: all current and former hourly Corrections officers employed by Defendant between January 1, 2017 and April 4, 2020; all current and former hourly workers employed by Defendant who received a Perfect Attendance Bonus between January 1, 2017 and April 4, 2020; and all former and current hourly workers employed by Defendant who received a Medical Opt-Out payment between January 1, 2017 and April 4, 2020. Eligible Settlement Participants will receive a settlement payment if they submit a timely Claim Form as outlined in the Collective Action Settlement Agreement and Release. Representative Plaintiffs and Opt-In Plaintiffs are not required to submit a Claim Form to a Settlement Award payment.

Action; (c) Plaintiffs' Counsel's attorney fees and litigation expenses; and (d) the cost of settlement administration. (*Id.*). In exchange for this payment, Representative Plaintiffs will release Defendant from claims as set forth in the Collective Action Settlement Agreement and Release.

A Notice of Settlement and Claim Form (attached to the Agreement) will be sent to the Eligible Settlement Participants. Eligible Settlement Participants who timely return their Claim Form will become Claimants,[3] and Claimants will receive a settlement payment. Claimants will be bound by the Agreement. Those Eligible Settlement Participants who do not join the settlement retain the right to pursue their own claims (Lalak Decl. ¶ 19).

Individual settlement payments will be calculated based on the number of weeks worked by each Eligible Settlement Participant during the Covered Period, with each participant receiving a *pro-rata* share of the Net Settlement Fund based on the number of workweeks worked by all Eligible Settlement Participants during the Covered Period. This type of allocation is commonly used in class and collective action settlements. (Lalak Decl. ¶ 21).

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and the Representative Plaintiffs and the Claimants will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the lawsuit. (Lalak Decl. ¶ 22).

    **D.**    <u>The Total Settlement Amount is Fair and Reasonable.</u>

As set forth above, Plaintiffs' Counsel engaged the services of a PhD economist to construct a damages model using the information produced by Defendant. The PhD economist

---

[3] Representative Plaintiffs and the Opt-In Plaintiffs are Claimants but are not required to submit a Claim Form to become Claimants.

4

conducted an analysis of the time and payroll data for the Eligible Settlement Participants and calculated the amount of alleged recoverable damages based on various fact patterns discussed by the Parties in the course of settlement discussions. (Lalak Decl. ¶ 13). According to the economist's calculations based on the given set of assumptions discussed by the Parties, the total amount of alleged unpaid wages is $106,096.48. Accordingly, the total settlement amount is approximately 100% of the amount of alleged unpaid wages calculated by the PhD economist, and thus represents a fair and reasonable outcome.

II.     PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

     A.     The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D.Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the

5

likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3.

The settlement in this case satisfies each of these elements.

    1.    *No Indicia of Fraud or Collusion Exists.*

There are no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arms-length and good faith negotiations between the Parties, which were informed by an alleged damages analysis conducted by a PhD economist. As such, there are no indicia of fraud or collusion, and this factor favors approval of the settlement.

    2.    *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this case had not settled, the Parties would be required to engage in costly litigation which would necessarily include extensive class discovery, briefing before this Court concerning the issues of class decertification, dispositive motion practice along with potential trial and appeal.

6

The Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Lalak Decl. ¶ 26).

       3.    *Investigation Was Sufficient to Allow the Parties to Act Intelligently*.

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendant produced hundreds of pages of data evidencing hours worked by Eligible Settlement Participants during the Covered Period, and spreadsheets containing hundreds of thousands of lines of data. (Lalak Decl. ¶ 13). Plaintiffs' Counsel engaged the services of a PhD economist to compile the damages model. The model was built and further adjusted based on discussion by the Parties in the course of settlement negotiations. (Lalak Decl. ¶ 13). This exercise allowed the Parties to fully appreciate the risk picture. Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. (*Id.*). Accordingly, investigation was sufficient to allow the Parties to act intelligently.

       4.    *The Risks of Litigation Favor Approval*.

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiffs allege that Defendant violated the Fair Labor Standards Act by (1) failing to compensate corrections officers for "pass down" work performed at the beginning and end of each shift; (2) failing to incorporate perfect attendance bonuses into the regular rate when calculating overtime; and (3) failing to incorporate medical opt out bonuses into the regular rate when calculating overtime. Defendant, however, denies liability on each of these claims, and further disputes the extent of liability as to each claim. Accordingly, had this case not settled, the parties would have engaged in costly and protracted litigation. Had this case not settled, it is possible that individual recovery for the Eligible Settlement Participants under the Agreement is significantly more than

the amount to which the Eligible Settlement Participants would have recovered at trial, and it is also possible that there would be no recovery for the Eligible Settlement Participants at all. This settlement agreement provides a favorable result to the Parties without the attendant risks and costs of litigating this matter to a final decision on the merits.

     5.    *The Opinion of Plaintiffs' Counsel Favor Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. (Lalak Decl. ¶¶ 3-7). At all times, Plaintiffs' counsel represents that they have acted in good faith and have vigorously represented the interests of the Eligible Settlement Participants, which include Representative Plaintiffs. Plaintiffs' Counsel recommends this settlement as fair and reasonable. (Lalak Decl. ¶¶ 20- 28). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the settlement.

     6.    *The Reaction of Absent Class Members*.

If the Court approves the settlement, the Eligible Settlement Participants will receive a Notice of Settlement and Claim Form. They will be given the option to join the settlement. Only those Eligible Settlement Participants that join the settlement will be bound by the Agreement. Those that do not join the settlement will retain the right to pursue their own claims. (Lalak Decl. ¶ 19).

     7.    *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). Similarly, in *Wright*, "the settlement confers immediate benefits on the Eligible Settlement Participants, avoids the risks and

expense in further litigation, and conserves judicial resources." *Id.* Thus, just as in *Wright*, the Court should find that this factor supports approval of the Settlement.

      B.      <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

          1.    *The Individual Payments are Fair, Reasonable and Adequate*.

As mentioned above, as part of their pre-mediation evaluation, Plaintiffs' Counsel retained an economist to analyze the class data provided by Defendant's counsel. According to the economist's calculations based on the given set of assumptions discussed by the Parties, the total amount of alleged unpaid wages is $106,096.48. Of course, this figure assumes that this case is litigated to a verdict, and that Representative Plaintiffs would succeed on each issue raised in this case. (Lalak Decl. ¶ 24). In light of the risks inherent to litigation, the possibility of class decertification, and the possibility that Plaintiffs may only recover on some of the claims, or that the recovery would be less than the amount calculated based on the Parties' assumptions, the proposed settlement is fair, adequate, and reasonable. (*Id.*).

All individual payments will be calculated proportionally based on the number of weeks worked by each Eligible Settlement Participant during the Covered Period, with each participant receiving a *pro-rata* share of the Net Settlement Fund based on the number of workweeks worked by all Eligible Settlement Participants during the Covered Period. This type of allocation is commonly used in class and collective action settlements. (Lalak Decl. ¶ 21). As such, each Eligible Settlement Participant will have the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant within the period of time covered by the settlement.

9

        2.      *Representative Plaintiffs' Service Award is Proper and Reasonable.*

The Agreement provides for a service award of $2,500 each to the Representative Plaintiffs, in addition to their individual payment. (Lalak Decl. ¶¶ 15-16). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

Here, the Representative Plaintiffs contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. (Lalak Decl. ¶ 16).

        3.      *The Attorney Fees and Costs to Plaintiffs' Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of settlement are fair to the Eligible Settlement Participants, it may review the Agreement as to the provision of fees and litigation expenses to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing

plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount: $35,333.33. A one-third fee request has been approved in numerous collective and class actions in this Court and within the Sixth Circuit. *See Mattison v. Trubridge*, N.D. Ohio 5:19-cv-01618; *Benton v. M.K. Morse Company*, Northern District of Ohio Case No. 5: 19-CV-00933; *Braucher, et al. v. Atlas Railroad Construction, LLC.*, Northern District of Ohio Case No. 5:14-cv-01601; *Mulloy, et al. v. Cuyahoga County*, Northern District of Ohio, Case No. 1:14-cv-02546. Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019).

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Motion are $8,886.90. (Lalak Decl. at ¶ 17). In addition, the costs of administration will not exceed $6,000 pursuant to a firm quote provided to Plaintiff's counsel by a third-party settlement administrator.These costs were incurred by Plaintiffs' Counsel exclusively for the purpose of preserving, and presenting the claims of the Plaintiffs and the Eligible Settlement Participants. (*Id.*). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of

11

claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

III.     CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of a bona fide FLSA dispute, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal With Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payments; and (4) retain jurisdiction to enforce the settlement if necessary.

Respectfully submitted,

| | |
|---|---|
| */s/ Christopher J. Lalak* | */s/ Scott H. DeHart* |
| CHRISTOPHER J. LALAK (0090079) | MICHELE L. JAKUBS (0071037) |
| Nilges Draher LLC | ZASHIN & RICH Co., L.P.A. |
| 1360 East Ninth Street | Ernst & Young Tower |
| Suite 808 | 950 Main Avenue, 4th Floor |
| Cleveland, Ohio 44114 | Cleveland, Ohio 44113 |
| Telephone:  216.230.2955 | Telephone 216.696.4441 |
| clalak@ohlaborlaw.com | Facsimile:  216.696 1618 |
| | mlj@zrlaw.com |
| HANS A. NILGES (0076017) | |
| Nilges Draher LLC | SCOTT H. DEHART (0095463) |
| 7266 Portage St., N.W., Suite D | ZASHIN & RICH Co., L.P.A. |
| Massillon, Ohio 44646 | 17 South High Street, Suite 900 |
| Telephone: 330.470.4428 | Columbus, Ohio 43215 |
| Facsimile: 330.754.1430 | Telephone: (614) 224-4411 |
| hans@ohlaborlaw.com | Facsimile: (614) 224-4433 |
| | shd@zrlaw.co |
| Counsel for Plaintiffs | |
| | JESSICA L. LOGOTHETIDES (0093359) |
| | Assistant Prosecuting Attorneys, Civil Division |
| | 110 Central Plaza South, Suite 510 |
| | Canton, OH 44702 |
| | (330) 451-7636 • (330) 451-7225 fax |
| | jllogothetides@starkcountyohio.gov |
| | |
| | Counsel for Defendant |